# IN THE COURT OF APPEALS OF IOWA

No. 18-1526
Filed December 5, 2018

**IN THE INTEREST OF K.L.,**
**Minor Child,**

**V.S., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Blake D. Lubinus of Lubinus Law Firm, PLLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Kimberly Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her child. The sole question presented on appeal is whether termination is in the child's best interests. For the reasons that follow, we find it is and affirm the termination of the mother's parental rights.

The child was born in 2016. In September 2017, the child was removed from the mother and was adjudicated to be a child in need of assistance (CINA) because of the mother's substance-abuse and mental-health issues. The child was placed in the care of the father. Despite the offer of services to address her substance abuse and mental health, the mother's issues remained unresolved at the time of the August 2018 termination hearing.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2018). The mother does not dispute termination is appropriate under this section but instead argues termination is contrary to the child's best interests. We review her claim de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's factual findings, although they are not binding. *See id.*

The court may terminate parental rights if one of the grounds for termination under section 232.116(1) exists. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). In determining whether to terminate parental rights, the court must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* (quoting Iowa Code § 232.116(2)).

The juvenile court determined that the child's best interests would be served by remaining in the father's care. It also set forth its reasons for finding the child's best interests necessitated terminating the mother's parental rights:

> Sadly, [the mother]'s behavior and conduct over the past several years, including over the course of the CINA proceedings, makes clear that any contact that she would have with [the child] would have to be fully supervised for an extensive period of time, possibly until the child is old enough to be able to fully protect herself, many years from now. Managing the who and how of that supervision (other than, perhaps, phone calls, emails, cards and letters) would be extremely difficult for [the father]. Further, inconsistent or sporadic contact with her mother, the kind that comes with a cycle of substance abuse, un-medicated mental health disorders, hospitalizations and/or incarcerations, has been and would remain harmful to [the child]. It is these concerns that tip the balance between permanency through a custody order or termination of parental rights in favor of the latter.

The record supports this finding, and we adopt it as our own.

The mother complains that the juvenile court failed to "discuss the potential for harm [the child] could experience *as a result* of severing [the mother]'s parental rights." On our de novo review, we find any harm to the child from terminating the mother's parental rights is outweighed by the harm the child would face if the mother continues to be involved in the child's life. The child was one year old at the time of removal, and the mother acknowledged that the parent-child bond suffered as a result of her substance-abuse and mental-health issues. The child protective worker did not observe a strong bond and attachment between the mother and the child during the course of the CINA proceedings. The interaction between the child and the mother during visits reinforces this view.

Concerns about the mother's ability to co-parent with the father present a risk of harm to the child, who is placed with the father. During the CINA

proceedings, the mother fixated on reestablishing a relationship with the father even though the father made it clear that he only wished to communicate with her about the child. The mother admitted that she focused more on her relationship with the father than her relationship with the child and acknowledged that conflict between her and the father negatively affects the child. The record shows that unless the mother's parental rights are terminated, the issue is likely to persist. Despite the mother's claim that she has accepted the end of her relationship with the father, the letters she wrote to the father after her May 2018 incarceration demonstrate she continued to be focus on her relationship with the father more than her relationship with the child.

Because preserving the parent-child relationship poses more harm to the child than termination of the mother's parental rights, termination is in the child's best interests. Accordingly, we affirm.

**AFFIRMED.**